**ORIGINAL**

1 | Leonard M. Shulman - Bar No. 126349
Mark Bradshaw - Bar No. 192540
2 | **SHULMAN HODGES & BASTIAN LLP**
26632 Towne Centre Drive, Suite 300
3 | Foothill Ranch, California 92610-2808
Telephone:    (949) 340-3400
4 | Facsimile:    (949) 340-3000

5 | Proposed Counsel for Advanced Materials, Inc., a California corporation
and Advanced Materials Group, Inc., a Nevada corporation,
6 | the Debtors and Debtors in Possession

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

| | |
|---|---|
| In re | Case No.  8:09-bk-16548 TA |
| | Chapter 11 |
| **ADVANCED MATERIALS, INC., a California corporation,** | |
| | Jointly Administered with |
| | Case No. 8:09-bk-16529 TA |
| Debtor. | |

| | |
|---|---|
| In re | **DEBTORS' MOTION FOR ORDER:** |
| **ADVANCED MATERIALS GROUP, INC., a Nevada corporation,** | **(1) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF ADVANCED MATERIALS, INC., PURSUANT TO BANKRUPTCY CODE SECTION 363(b)(1) AND (f);** |
| Debtor. | **(2) APPROVING THE BIDDING PROCEDURES UTILIZED BY THE DEBTORS;** |
| | **(3) APPROVING THE ASSET PURCHASE AGREEMENT;** |
| | **(4) APPROVING STIPULATED BANKRUPTCY CODE SECTION 506(c) SURCHARGE; AND** |
| | **(5) GRANTING OTHER RELATED RELIEF** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARTIN A. LEHMAN IN SUPPORT** |
| | **[Motion for Order Shortening Time and Order Shortening Time for Hearing Filed Concurrently]** |
| | Date:   To be Set |
| | Time:   To be Set |
| | Place:  Courtroom 5B, U.S. Bankruptcy Court |
| | 411 West Fourth St., Santa Ana, CA 92701 |

11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

1

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3961-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................... 6

II.     SALE MOTION .......................................................................................................... 7

        A.      Case Commencement ......................................................................................... 7

        B.      Debtors' Background .......................................................................................... 8

        C.      Principal Events Leading to the Bankruptcy Filing ......................................... 8

        D.      The Sale Process ................................................................................................ 9

        E.      Summary of the Assets to be Sold and Sale Terms ....................................... 10

        F.      Treatment of the Liens and Encumbrances Under the Sale ............................ 14

        G.      Approval of the Sale Serves the Best Interests of the Estates and Creditors ........ 16

III.    NOTICE OF BIDDING PROCEDURES .............................................................. 17

IV.     AUTHORITIES ...................................................................................................... 18

        A.      The Court May Approve the Sale .................................................................... 18

                1.      Sound Business Purpose .................................................................... 19

                2.      The Sale Serves The Best Interests Of the Estate and Creditors .............. 20

                3.      Accurate and Reasonable Notice ....................................................... 21

                4.      The Sale is Made In Good Faith ........................................................ 21

        B.      Sale of the Property Free and Clear of Liens and Encumbrances Should be
                Permitted ......................................................................................................... 22

                1.      Section 363(f)(2)- Consent ................................................................ 22

                2.      Section 363(f)(4)- Bona Fide Dispute ............................................... 23

        C.      The Sales Do Not Contravene Policy .............................................................. 23

        D.      The Court Has Authority to Approve the Bidding Procedures ....................... 24

                1.      The Bidding Procedures are Untainted by Self-Dealing ................... 24

                2.      The Bidding Procedures Encourage Bidding .................................... 24

                3.      The Bidding Procedures Serve the Best Interests of the Estate ............... 25

        E.      The Costs for the Preservation and Disposal of the Collateral May be
                Recovered From the Sale Proceeds ................................................................. 26

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3961-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1      F.      The Court has Authority to Waive the Ten-Day Stay of Sale ................................ 28

2  V.      CONCLUSION.......................................................................................................... 28

3  DECLARATION OF MARTIN A. LEHMAN ............................................................................ 30

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3

3961-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

# TABLE OF AUTHORITIES

Page

## CASES

General Elec. Captial Corp v. North County Jeep & Renault, 506 U.S. 821, 121
L.Ed. 2d 37, 113 S.Ct. 17 (1992) .......................................................................... 26

In re Anderson, 66 B.R. 97 (B.A.P. 9th Cir. 1986) ...................................................... 28

In re Annett Ford, Inc., 64 B.R. 946 (D. Neb. 1986) ................................................... 27

In re Beker Indus. Corp.,
    63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986) ............................................................ 22

In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983) ............................................. 23

In re Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind.
    1989) ................................................................................................................. 23

In re Cascade Hydraulics & Utility Srv., Inc., 815 F.2d 546 (9th Cir. 1987) ................ 27

In re Continental Air Lines, Inc.,
    780 F.2d 1223 (5th Cir. 1986) ............................................................................. 19

In re Crown Corporation,
    679 F.2d 774 (9th Cir. 1982) ............................................................................... 24

In re Crowthers McCall Pattner, Inc.,
    114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) .......................................................... 19

In re Delta Towers, Ltd., 924 F.2d 74 (5th Cir. 1991) .................................................. 26

In re H.P. Tool Mfg. Corp., 12 B.R. 600 (Bankr. E.D. Pa. 1981) ................................ 28

In re Hospitality, Ltd., 86 B.R. 59 (Bankr. W.D. Pa. 1988) .......................................... 27

In re Lionel Corp.,
    722 F.2d 1063 (2d Cir. 1983) ......................................................................... 19, 20

In re McKeesport Steel Castings Co., 799F.2d 91 (3d Cir. 1986) ............................... 26

In re Palomar Truck Corp., 951 F.2d 229 (9th Cir. 1991) ........................................... 26

In re Parque Forestal, Inc., 949 F.2d 504 (1st Cir. 1991) ........................................... 26

In re Terrace Gardens Park Partnership,
    96 B.R. 707 (Bankr. W.D. Tex. 1989) ................................................................. 22

In re Walter,
    83 B.R. 14 (Bankr. 9th Cir. 1988) ....................................................................... 19

In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981) ...................................... 23

4

3961-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

In re Wilde Horse Enterprises, Inc.,
   136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ................................................................. 19, 21

Snohomish County v. Seattle-First Nat'l Bank (In re Glasply Marine Industries,
   Inc.), 971 F.2d 391 (9th Cir. 1992) ............................................................................ 27

## STATUTES

Bankruptcy Code Section 105(a) ............................................................................................ 24

Bankruptcy Code Section 363(b) ...................................................................................... 18, 19

Bankruptcy Code Section 363(b)(1) ...................................................................................... 24

Bankruptcy Code Section 363(f) ........................................................................................... 22

Bankruptcy Code Section 363(f)(2) ....................................................................................... 22

Bankruptcy Code Section 363(m) .......................................................................................... 21

Bankruptcy Code Section 506(c) ........................................................................ 23, 26, 27, 28

Bankruptcy Code Section 541 .............................................................................................. 18

Federal Rule of Bankruptcy Procedure 6004(g) ................................................................... 28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3961-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

# I.    **INTRODUCTION**

Advanced Materials, Inc., a California corporation, ("AMI") and Advanced Materials Group, Inc., a Nevada corporation, ("AMG") the jointly administered debtors and debtors in possession ("Debtors") bring this Motion For Order: (1) Approving Sale of Substantially All Assets of Advanced Materials, Inc., Pursuant to Bankruptcy Code Section 363(b)(1) and (f); (2) Approving the Bidding Procedures Utilized by the Debtors;  (3) Approving the Asset Purchase Agreement; (4) Approving Stipulated Bankruptcy Code Section 506(c) Surcharge; and (5) Granting Other Related Relief ("Sale Motion").

**As set forth in more detail below, the Debtors seek Court approval to sell their Foam Manufacturing Business Assets[1] to the highest bidder (referred to herein as the "Successful Bidder" or "Buyer").   The Debtors have been in communication with several prospective buyers for the Foam Manufacturing Business Assets and seek to encourage the potential purchasers to submit their final bids so that that the Debtors can determine the Successful Bidder, obtain Court approval of the sale to the Successful Bidder and close on the sale by August 31, 2009.  The Debtors need to act quickly as they have almost exhausted cash to fund operations, need to stop the accrual of administrative claims, and intend to cease all business operations and terminate employees at the end of this month absent a closed sale transaction.**

**A further reason for moving quickly on the sale is that the initial round of bidding conducted by the Debtor indicated that all offers received were for far less money than is owed to secured creditor JPMorgan Chase Bank, N.A. ("Chase").   Most of the Foam Manufacturing Business Assets to be sold are subject to the lien in favor of Chase.  With the consent of Chase, provided that the sale closes quickly, the Foam Manufacturing Business Assets will be sold free and clear of all liens and encumbrances, with any liens and encumbrances not satisfied through the sale to attach to the proceeds of the sale in the same validity and priority as prior to the Petition Date.  Chase has understandably advised the Debtors that it either wants the sale to be immediately concluded or the foam**

---

[1]    Capitalized terms are defined below.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1  **manufacturing business should immediately be closed down due to the inadequate cash**

2  **flow.   As such, concurrent with the filing of this Sale Motion, the Debtors are filing a**

3  **Motion for Order Shortening Time for Hearing to request that the hearing on the Sale**

4  **Motion be scheduled on or before August 27, 2009, with the intention that the sale could**

5  **close by August 31, 2009**.

6      **An Asset Purchase Agreement ("Agreement" or "Purchase Agreement") in the form**

7  **as attached as Exhibit 1 to the Declaration of Martin A. Lehman ("Lehman Declaration")**

8  **has been provided to the prospective bidders and each will be provided with a copy of this**

9  **Sale Motion.   Among other things, the Bidding Procedures provide that Qualified Bids be**

10  **submitted at least 24 hours prior to the hearing on the Sale Motion, must be substantially**

11  **identical to the Purchase Agreement attached as Exhibit 1 to the Lehman Declaration**

12  **together with a redlined, marked copy showing all changes to the Purchase Agreement.**

13      The Debtors believe the only option available is the <u>immediate</u> orderly sale of the Foam

14  Business Manufacturing Assets subject to the proposed Bidding Procedures set forth below and

15  based on good business reasons, it is in the best interest of the creditors of the Estates that this

16  Sale Motion be approved so that Debtors do not lose this favorable business opportunity.

17              **II.    SALE MOTION**

18      In support of the Sale Motion, the Debtors respectfully represents as follows:

19  **A.    Case Commencement**

20      The Debtors each filed a voluntary petition for relief under Chapter 11 of United States

21  Bankruptcy Code on July 2, 2009 ("Petition Date").   The Debtors are continuing in their

22  operation and management of their business pursuant to Bankruptcy Code Sections 1107 and

23  1108 as debtors in possession.

24      Upon the Motion for Order Directing Joint Administration of Related Cases filed by the

25  Debtors and considered by the Court at a hearing held on July 7, 2009, the Court ordered

26  Debtors' bankruptcy cases to be jointly administered under Case No. 8:09-bk-16548 TA in

27  accordance with Federal Rule of Bankruptcy Procedure 1015(b).

28

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

7

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

**B.** **Debtors' Background**

Prior to the Petition Date, AMG was a publically traded company (ticker ADMG:OTC) but has now been delisted by the Securities and Exchange Commission. AMG's primary asset is its ownership of 100% of the shares of AMI. Debtor AMI is the operating entity which develops, manufactures and markets a wide variety of products from a raw material base of flexible components. AMI's customers are in the medical disposables, technology, aerospace, automotive and consumer markets. AMI (formerly known as Wilshire Advanced Materials, Inc.) is the successor to a 50 year old business that converted specialty materials including foams, foils, films and adhesive composites into components and finished products. In 2008, AMI continued its transition from the foam fabricator/contract manufacturing business to proprietary medical and consumer products.

Examples of the products AMI manufactures include non-skid surgical instrument pads and applicators for medical use, soap impregnated surgical prep kit sponges, protective units for arthroscopic and orthopedic instruments, printer cartridge inserts and inking felts, automobile insulators and water and dust seals. These products are made for a number of customers in various markets including medical, technology, aerospace, automotive and consumer. AMI's offerings to its customers include contract manufacturing, engineering and fulfillment services. AMI's Advanced Materials Fashion Solutions Product Division sells and markets proprietary consumer fashion products. Effective January 1, 2008, AMG entered into a strategic licensing agreement with Easy Industries, LLC for its line of women's problem-solving fashion and accessory products, branded as Miss Oops®. Through this agreement, AMG obtained rights to the Miss Oops® name and product line and a 10% equity ownership of Easy Industries, LLC.

**C.** **Principal Events Leading to the Bankruptcy Filing**

The principal events leading to the Debtors' current financial problems arise from the intentional and negligent conduct by the AMG's former president, William Mortensen, who was also the Chief Financial Officer for AMI. The Debtors are investigating the allegations that Mr. Mortensen falsified company records and used assets of the Debtors, including substantial amounts of cash, for his own personal use. On or about June 2, 2009, the Chairman of the Audit

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1    Committee of the Company Board of Directors for AMG and the AMG's Chairman of the Board

2    received an anonymous tip pursuant to their whistleblower policy which alleged that there may

3    have been financial irregularities at the company.   Following a preliminary investigation, on

4    June 8, 2009, the Audit Committee and full Board of Directors determined that restatements of

5    the AMGI's consolidated financial statements for the fiscal year ended November 30, 2008 and

6    for the interim quarterly periods ended May 31, 2008, August 31, 2008, and February 28, 2009

7    were necessary.  Accordingly, the reports AMGI filed on Form 10-KSB for the fiscal year ended

8    November 30, 2008, and on Form 10-Q for the quarters ended May 31, 2008, August 31, 2008,

9    and February 28, 2009 with the United States Securities and Exchange Commission should no

10   longer be relied upon.  Because the investigation has not yet been completed, the extent of the

11   revenue and accounts receivable overstatements during the forgoing period have not yet been

12   fully quantified.

13        On June 7, 2009, Mr. Mortensen was terminated for cause.  One of the assets of the

14   Debtors is claims against Mr. Mortensen in an amount to be determined. Due to the loss of funds

15   and irregular reporting by prior management, the Debtors had been unable to meet operating

16   expenses, to pay employees, to pay for utility services including gas, electric, and water, and to

17   pay vendors and supplies.  Upon the termination of Mr. Mortensen, Martin A. Lehman was hired

18   as Interim President.   Mr. Lehman is currently in charge of overseeing the wind down of AMI's

19   operations and will be resigning his duties by the end of August 2009.

20   **D.      The Sale Process**

21        Shortly after the Petition Date, the Debtor initiated a process to sell the Foam Business

22   Manufacturing Assets and informally drafted and circulated bidding procedures similar to those

23   typically seen in connection with bankruptcy sales.   The Debtor solicited offers from

24   competitors, vendors, employees, management, and anyone the Debtor believed might have a

25   reasonable interest and ability to close a sale transaction.  The Debtor initiated this process in

26   part based on its projections that it would run out of cash by September 2009, and in part because

27   it estimated that the value of the assets to be sold were less than the amount of the secured debt

28   owed to Chase.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1    Six parties signed non-disclosure agreements and engaged in due diligence in connection

2  with the sale.  Of those parties, three submitted letters of intent expressing an interest in

3  proceeding with a sale transaction.  The three letters of intent contained materially different

4  terms.  After internal discussions at the Debtor about the merits and weaknesses of the various

5  LOIs, the Debtor solicited the comments of Chase, and the parties agreed that one of the LOIs

6  appeared to be superior to the others and warranted moving forward.  Thereafter, the Debtor

7  drafted a formal purchase and sale agreement and forwarded it to the proposed purchaser and to

8  Chase.  In the days and then weeks that followed, various drafts of the purchase agreement were

9  prepared and the parties generally progressed in a positive direction.

10    Unfortunately, the Debtor's cash position did not improve and it became clear that the

11  Debtor would have to cease all business operations and terminate employees at the end of

12  August 2009.  Therefore, the Debtor decided, after consulting with Chase, that a sale motion had

13  to be filed immediately with a sale date set as soon as possible.  Moreover, because of protracted

14  negotiations over terms of the asset purchase agreement it became necessary to prepare a form

15  purchase agreement with a fixed sale price and other terms that created certainty in the

16  transaction.

17    The Debtor is proposing to sell the Purchased Assets (defined below) through an auction

18  procedure with the name of the buyer currently left blank in the purchase agreement.  As set

19  forth in the purchase agreement, the proposed sale price for the assets, subject to overbids, is

20  $650,000.

21  **E.    Summary of the Assets to be Sold and Sale Terms**

22    Subject to the Bidding Procedures set forth below and Court approval, the Debtors are

23  seeking Court approval for the sale of substantially all assets relating to the foam manufacturing

24  business of AMI to the Successful Bidder, pursuant to the terms and conditions as set forth in the

25  Purchase Agreement attached as **Exhibit 1** to the Lehman Declaration, as modified by the

26  Successful Bidder's Qualified Bid.

27    For the sake of brevity, the Purchase Agreement is not fully described herein.  However,

28  a copy of the Purchase Agreement is attached to the Lehman Declaration as **Exhibit 1**.  Also,

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

10

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

copies of the Purchase Agreement may be obtained by contacting Debtors' counsel at the address indicated on the first page of this Sale Motion.

Excerpts from the Purchase Agreement setting forth the principal sale terms are as follows (at times, the Debtors are referred as the "Seller", the Successful Bidder or Buyer is referred to as "Purchaser" and the assets to be sold, the "Foam Manufacturing Business Assets," are referred to as the "Purchased Assets" in the following summary):

**1.** **Purchase and Sale of Assets.** On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Sellers shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Sellers the following assets (collectively, the "Purchased Assets"):

1.1   <u>Inventory</u>. All of Seller's right, title and interest in and to inventory listed on <u>Schedule 1.1</u> attached hereto and incorporated herein by this reference (the "Inventory");

1.2   <u>Other Personal Property</u>. All of those items of equipment, machinery, tools, furniture and other personal property listed on <u>Schedule 1.2</u> attached hereto and incorporated herein by this reference (collectively, the "Personal Property");

1.3   <u>Equipment Leases</u>. All of Sellers' right, title and interest in and to those certain equipment leases listed on <u>Schedule 1.3</u> attached hereto and incorporated herein by this reference (collectively, the "Equipment Leases");

1.4   <u>Real Property Lease</u>. Subject to Landlord's consent and/or Court order, all of Sellers' right, title and interest in and to the tenant's interest under that certain Lease dated August 2, 1994, as amended, by and between Susana Property Co., a California general partnership ("Landlord") and Advanced Materials Group, Inc., a California corporation, and Wilshire Advances Materials, Inc., a California corporation, predecessor of AMI (collectively, the "Tenant"), as original tenant with respect to the premises commonly known as 20211 Susana Road, Compton California (the "Premises"), a true and correct copy of which together with all amendments, addendums and modifications thereto is attached hereto as <u>Schedule 1.4</u> (hereinafter the "Real Property Lease") and hereby approved by Buyer by virtue of Buyer's execution and delivery of this Agreement;

1.5   <u>Receivables</u>. All of Sellers' rights, title and interest in and to those amounts due from the Sellers' customers, vendors, and other parties related to the sale of their products that are listed on <u>Schedule 1.5</u> attached hereto (collectively, the "Receivables"), subject to updated changes as of the Closing Date; and

1.6   <u>Intellectual Property</u>. All of Sellers' right, title and interest in and to those certain patents, trademarks, copyrights, and other intellectual property listed on <u>Schedule 1.6</u> attached hereto and incorporated herein by this reference (collectively, the "Intellectual Property").

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

**2.** **Excluded Assets**.    Notwithstanding anything to the contrary in this Agreement, the Purchased Assets shall be limited to the items specifically identified or described in Section 1 above and shall in any event exclude all of the following (collectively, the "Excluded Assets"): (i) all cash or cash equivalents; (ii) Sellers' rights under this Agreement and all cash and non-cash consideration payable or deliverable to the Sellers pursuant to the terms and provisions hereof; (iii) any and all claims and causes of action against the accounting firm of Fei-Fei Catherine Fang, CPA; (iv) insurance proceeds, claims and causes of action in connection with the alleged criminal actions of William G. Mortensen and any other former employees of Sellers; (v) any and all proceeds resulting from the liquidation of the inventory from Jennifer Higgins/Easy Industries, LLC; (vi) any item of tangible or intangible property not acquired by Buyer at the Closing; and (vii) tax records, minute books, stock transfer books and corporate seals of Sellers.

**3.** **Consideration; Purchase Price.**

3.1    Purchase Price. The purchase price ("Purchase Price") to be paid by Buyer to Sellers at Closing (as defined herein) for the Purchased Assets shall be an amount equal to $650,000. The Purchase Price is inclusive of any cure amounts required of Sellers to pay with respect to the Real Property Lease and Equipment Leases.

3.2    Payment of Purchase Price.  At Closing, Buyer shall pay to Sellers the Purchase Price in immediately available funds.

3.3    Assumed Liabilities.  Buyer shall, effective as of the Closing Date, assume all liabilities and obligations arising under and in connection with the Real Property Lease and Equipment Leases (other than cure payments) from and after the Closing Date. Except for the foregoing, Buyer shall not assume any liabilities of Sellers.

3.4    Release of Security Interests.  Sellers' shall obtain a Sale Order (as defined herein) which provides for the sale and transfer of the Purchased Assets free and clear of all liens, claims, interests and encumbrances.

**4.** **Bankruptcy Court Approval.**

4.1    Bankruptcy Court Approval.  Sellers agree to proceed in good faith to obtain Bankruptcy Court approval of the sale contemplated herein.

4.2    Sale Order.  This Agreement shall become final upon the entry of a final order (the "Sale Order") of the Bankruptcy Court authorizing the Sellers to enter into this Agreement and approving the terms set forth herein. Upon entry of the Bankruptcy Court Sale Order approving this Agreement, Closing for the purchase of the Purchased Assets pursuant to the terms of this Agreement shall proceed without any undue delay.

**5.** **Closing**.

5.1    Closing; Closing Date.  Subject to the terms and conditions hereof, the closing of the transactions contemplated by this Agreement (the "Closing") shall take place at a place as the parties mutually agree upon, on the date which is no later than August 31, 2009 ("Closing Date").

5.2    Sellers' Deliveries to Buyer at Closing.  On the Closing Date, Sellers shall make the following delivery to Buyer: A bill of sale, duly executed by Sellers in the form and on the terms of the bill of sale attached hereto as Exhibit "A," pursuant to which Sellers assign and transfer the Purchased Assets to Buyer (the "Bill of Sale").

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

5.3    <u>Sales, Use and Other Taxes</u>.  Any sales, purchases, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, which may be payable by reason of the sale of the Purchased Assets under this Agreement or the transactions contemplated herein shall be borne and timely paid by Buyer.

5.4    <u>Prorations</u>.   All prorations shall be made as of Closing Date.

5.5    <u>Possession</u>.  Sellers shall transfer and deliver to Buyer on the Closing Date such keys, locks and safe combinations and other similar items as Buyer may reasonably require to obtaining occupation and control of the Purchased Assets and the Premises.

**6.    <u>Conditions Precedent to Closing</u>.**

6.1    <u>Conditions to Sellers' Obligations</u>.   Sellers' obligation to make the deliveries required of Sellers at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Sellers of each of the following conditions:

(a)    All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects;

(b)    Buyer shall have performed in all material respects all of its obligations hereunder required to be performed by it at or prior to the Closing Date; and

(c)    The Bankruptcy Court shall have approved the sale of the Purchased Assets to Buyer and the terms of this Agreement, and shall have entered a Sale Order.

6.2    <u>Conditions to Buyer's Obligations</u>.   Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

(a)     Sellers shall have delivered, or shall be prepared to deliver to Buyer at the Closing, the Bill of Sale;

(b)    Sellers shall have performed in all material respects all of its obligations hereunder required to be performed by it at or prior to the Closing Date;

(c)    The Bankruptcy Court shall have approved the sale of the Purchased Assets to Buyer and the terms of this Agreement, and shall have entered the Sale Order.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

**F.      Treatment of the Liens and Encumbrances Under the Sale**

  The following Chart reflects the liens and encumbrances against the Foam Manufacturing

Business Assets and their proposed treatment through their sale:

| Secured Creditor | Description of Claim | Amount | Treatment Through the Sale |
|---|---|---|---|
| JPMorgan Chase Bank NA | Loan, UCC-1 Financing Statement filed with the California Secretary of State on 3/14/2007, Filing No. 077106308941 (substantially all assets) | Term Loan: $2,459,000 Credit Card Note: $66,000 | The Foam Manufacturing Business Assets shall be sold free and clear of this lien, with such lien to attach to the sale proceeds. |
| JPMorgan Chase Bank NA | Equipment Loan, UCC-1 Financing Statement filed with the California Secretary of State on 9/20/2007, Filing No. 077129629881 (Enterprise Roll Slitter, Model Number-Enterprise E2062) and UCC-1 Financing Statement filed with the California Secretary of State on 8/2/2007, Filing No. 077123939172 ( APMC 100 Ton Full Head Press #USA FH3563-100M) | $219,000 | The Foam Manufacturing Business Assets shall be sold free and clear of this lien, with such lien to attach to the sale proceeds. |
| National City Bank of MI IL | UCC- 1 Financing Statement filed with the California Secretary of State on 6/8/2005, Filing No. 057029749376 and the Texas Secretary of State, Filing No. 50017858458 (Used Circle F12K3S Form & Fill S/N 8883-1984) | Unknown | Purchaser shall assume the liability related to this claim.  As such, the Foam Manufacturing Business Assets shall be sold free and clear of this lien. |

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

| Secured Creditor | Description of Claim | Amount | Treatment Through the Sale |
|---|---|---|---|
| General Electric Capital Corporation | UCC-1 Financing Statement filed with the Nevada Secretary of State on 12/14/2000, Filing No. U0018531D000, Continuation filed 8/31/2005, Filing No. 2005027120-7, and Amendment filed 8/31/2005, Filing No. 2005027119-4<br><br>Equipment: FlexoExport PPMS 1602 Die Cutting System, Serial Number 2016910-1; and Albrecht Baurner IS/M Verticla Cutting Machine with Stationary Table and Traversing Cutting Unit, Serial Number 22826 | $.00 | This lien is disputed in that there are no amounts owing to General Electrical Capital Corporation as the claim was satisfied more than a year ago.  The creditor has failed to release the UCC-1 Financing Statement.<br><br>The Foam Manufacturing Business Assets shall be sold free and clear of this lien. |

The Debtors believe that none of the secured creditors will object to the sale free and clear of their respective liens, with liens not satisfied through the sale, to attach to the proceeds of the sale in the same validity and priority as prior to the closing of the sale pending further agreement or further court order.

Through this Sale Motion, the Debtors also seek approval of a Bankruptcy Code Section 506(c) surcharge in the amount of $35,000 against the collateral of the secured creditor Chase for the costs the Estates have incurred in the maintenance of Chase's collateral (consisting of the Foam Manufacturing Business Assets) as well as with the preservation and disposition of such collateral[2].  Payment to professionals (the Debtors' counsel and counsel for the Official Committee of Unsecured Creditors) covered by the surcharge will be subject to further application and Court order on the allowance of the professionals' fees and expenses under the applicable provisions of the Bankruptcy Code.  The professionals will be filing applications for fees in accordance with the applicable provisions of the Bankruptcy Code which will detail that

---

[2]    This amount would be paid pro rata to counsel for the Debtors and counsel for the Creditors' Committee based on total fees and costs due.  This amount is separate from and in addition to the $100,000 retainer paid to the Debtors' counsel prior to the Petition Date.  The Debtors negotiated this proposed carve out with Chase earlier this month.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

15

1    their fees are reasonable, necessary and benefited the secured creditors.  The funds from the sale

2    of will be held by Debtors in a segregated surcharge account subject to the fee application

3    process under the applicable provisions of the Bankruptcy Code.

4    **G.    Approval of the Sale Serves the Best Interests of the Estates and Creditors**

5        Prior to and since the Petition Date, the Debtors have explored diligently various options

6    for their assets.  The Debtors have contacted a number of entities to determine their interest in

7    the purchase of their Foam Manufacturing Business Assets.  The Debtors believe that they have

8    pursued thoroughly all means to maximize the value of the Foam Manufacturing Business

9    Assets.

10       The Debtors have inadequate cash flow to fund operations, the Debtors do not have the

11   luxury of the time needed to propose and solicit acceptance of a Chapter 11 plan prior to the

12   closing of the sale of the Foam Manufacturing Business Assets.

13       Furthermore, as the Debtors continue to accrue ordinary course of business administrative

14   expense obligations, it is imperative that the Debtors close on the sale of the Foam

15   Manufacturing Business Assets as soon as possible, to prevent the accrual of additional

16   administrative claims that would be detrimental to creditors.

17       A further reason for moving quickly on the sale is to preserve any going concern value of

18   AMI's business operations and prevent the shutdown of AMI's foam manufacturing business.

19   As set forth above, certain of the Foam Manufacturing Business Assets to be sold are subject to

20   the lien of Chase.  Chase has advised the Debtors that they either want the sale to be immediately

21   concluded or the foam manufacturing business immediately closed down due to the  inadequate

22   cash flow.  The Debtors do not dispute that Chase is owed more than $2.7 million and that none

23   of the offers received by the Debtors in the initial round of bidding exceeded $1 million.

24       In summary, the Debtors have made a business decision that it is in the best interest of the

25   creditors of the Estates that this Sale Motion be approved.  The sale provides benefit to the

26   Estates in that the alternative is to cease business operations, and the sale will preserve jobs and

27   the value of the Foam Manufacturing Business Assets.  Thus, good cause exists to grant the Sale

28   Motion.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

### III.    NOTICE OF BIDDING PROCEDURES

The Debtors have determined that it would benefit the Estates by permitting all interested parties to bid the for the Foam Manufacturing Business Assets.  Accordingly, in order to obtain the highest and best offer, the Debtors are utilizing the following bidding procedures ("Bidding Procedures"), which are in addition to the procedures utilized by the Debtor in the initial solicitation of offers.  The Debtors request that Court approve the following Bidding Procedures:

a.      Offers to acquire the Foam Manufacturing Business Assets shall be submitted in writing to Sellers and their counsel Shulman Hodges & Bastian LLP on or before 5:00 p.m. (Pacific Time) the day prior to the hearing on Sale Motion.

b.      Offers shall provide for purchase price to be paid to Seller that consists of all cash of at least $650,000.

c.      Competing offers shall be accompanied by a signed Asset Purchase Agreement in form and substance substantially identical to the Purchase Agreement attached as **Exhibit 1** to the Lehman Declaration, together with a redlined, marked copy showing all changes to the Agreement (the "Competing Agreement").

d.      Competing offers must not be subject to due diligence contingencies or other conditions; any bidder shall have an opportunity to review the books and records of AMI, provided that such bidder shall execute a non-disclosure agreement in form and substance acceptable to Sellers in Seller's sole discretion (notwithstanding the foregoing, all due diligence must be completed by all qualified bidders prior to the hearing on the Sale Motion).

e.      All competing bids must remain open until the conclusion of the hearing on the Sale Motion.

f.      All competing bids shall contain terms and conditions no less favorable to Sellers than the terms and conditions of the Purchase Agreement.

g.      All competing bids must be accompanied by admissible evidence in the form of affidavits or declarations establishing that the bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Agreement.

h.      All competing bids must be for no less than all of the Foam Manufacturing Business Assets.

i.      All competing bids must contain a proposed closing date that is not later than August 31, 2009.

j.      Each bidder submitting a qualified competing bid in accordance with these Bidding Procedures (each such bid, a "Qualified Bid"), may participate at a public auction of the Foam Manufacturing Business Assets (the "Auction") to be  held at the hearing on the Sale Motion.  The Auction shall be governed by the following procedures:

i.      All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

17

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

connection with any disputes relating to the Auction or the sale of the Foam Manufacturing Business Assets.

    ii.    Bidding will commence at the amount of the highest Qualified Bid.

    iii.    Each subsequent bid shall be in increments of no less than $25,000.

    iv.    Any entity that fails to submit a timely, conforming Qualified Bid, as set forth above, may be disqualified from bidding for the Foam Manufacturing Business Assets at the Auction or the Sale Hearing.

    v.    At the close of the Auction, the Sellers determine, in their sole discretion and in the exercise of their business judgment, shall identify which Qualified Bid had (i) the highest and best bid ("Successful Bid," and the bidder being the "Successful Bidder") and (ii) the next highest and best bid (the "Alternate Bid," and the bidder being the "Alternate Bidder").

    vi.    At the hearing on the Sale Motion, the Sellers will seek entry of an order, inter alia, authorizing and approving the sale of the Foam Manufacturing Business Assets to the Successful Bidder pursuant to the terms and conditions of the Purchase Agreement as modified by the terms of the Successful Bid.

The foregoing Bidding Procedures are fair and provide for a "level playing field" for all prospective bidders with respect to the proposed sale. The Bidding Procedures establish a reasonable timeline under the circumstances of this case for allowing the Debtors to give notice of the proposed sale and qualified bidders to conduct reasonable due diligence and submit competing offers, thereby potentially generating additional value. Furthermore, the notice of the Bidding Procedures and Sale Motion is designed to attract the most interest in the acquisition of the Foam Manufacturing Business Assets and is sufficient under the circumstances of these cases. Thus, the Debtors believe that approval of the Bidding Procedures would serve the best interests of the Estates and creditors.

## IV.    <u>AUTHORITIES</u>

### A.    <u>The Court May Approve the Sale</u>

Pursuant to Bankruptcy Code Section 541, upon the commencement of a case under Chapter 11, an estate is created which includes all legal and equitable interest of the debtor in property at the commencement of the case. The Debtors, after notice and hearing, may sell property of the Estates. Bankruptcy Code Section 363(b). The standards to establish are that

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

18

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1   there is a sound business purpose for the sale, that the sale is in the best interests of the estate,

2   i.e., the sale is for a fair and reasonable price, that there is accurate and reasonable notice to

3   creditors and that the sale is made in good faith.  In re Wilde Horse Enterprises, Inc., 136 B.R.

4   830, 841 (Bankr. C.D. Cal. 1991); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983).

5   Business justification would include the need to close a sale to one of very few serious bidders

6   where an asset has been extensively shopped and a delay could jeopardize the transaction.  See,

7   e.g., In re Crowthers McCall Pattner, Inc., 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) (extreme

8   difficulty finding a buyer justified merger when buyer found).   The proposed sale herein meets

9   the foregoing criteria.

10          **1.     Sound Business Purpose**

11          The Ninth Circuit in In re Walter, 83 B.R. 14 (Bankr. 9th Cir. 1988) has adopted a

12   flexible, case by case test to determine whether the business purpose for a proposed sale justifies

13   disposition of property of the estate under Section 363(b).  In Walter, the Ninth Circuit, adopting

14   the reasoning of the Fifth Circuit in In re Continental Air Lines, Inc., 780 F.2d 1223 (5th Cir.

15   1986), and the Second Circuit in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), set forth the

16   following standard to be applied under Bankruptcy Code Section 363(b).

17

18          Whether the proffered business justification is sufficient depends
        on the case.  As the Second Circuit held in Lionel, the bankruptcy

19      judge should consider all salient factors pertaining to the
        proceeding and, accordingly, act to further the diverse interests of

20      the debtor, creditors and equity holders, alike.  He might, for
        example, look to such relevant factors as the proportionate value of

21      the assets to the estate as a whole, the amount of lapsed time since
        the filing, the likelihood that a plan of reorganization will be

22      proposed and confirmed in the near future, the effect of the
        proposed disposition on future plans of reorganization, the

23      proceeds to be obtained from the disposition vis-a-vis any
        appraisals of the property, which of the alternatives of use, sale or

24      lease the proposal envisions and, most importantly perhaps,
        whether the asset is increasingly or decreasing in value.  This list is

25      not intended to be exclusive, but merely to provide guidance to the
        bankruptcy judge.

26

27   Walter, supra, at 19-20 [quoting In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir.

28   1986)].

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1    Here, the facts surrounding the sale support the Debtors' business decision that the

2    proposed sale is in the best interest of the Estate and its creditors.  The Debtors have inadequate

3    cash flow to fund operations, the Debtors do not have the luxury of the time needed to propose

4    and solicit acceptance of a Chapter 11 plan prior to the closing of the sale of the Foam

5    Manufacturing Business Assets.  Furthermore, as the Debtors continues to accrue ordinary

6    course of business administrative expense obligations, it is imperative that the Debtors close on

7    the sale of the Foam Manufacturing Business Assets as soon as possible, to prevent the accrual

8    of additional administrative claims that would be detrimental to general unsecured creditors as

9    well as to prevent the Debtors from losing this favorable opportunity.  Lastly, the Debtors need

10    to move quickly on the sale to preserve any going concern value of the AMI business operations

11    and prevent the shutdown of AMI's foam manufacturing business.  Chase has advised the

12    Debtors that they either want the sale to be immediately concluded or the foam manufacturing

13    business immediately closed down due to the  inadequate cash flow to fund business operations.

14    Therefore, the Debtors respectfully submit that, if this Court applies the good business

15    reason standard suggested by the Second Circuit in Lionel, the sale should be approved.

16    **2.    The Sale Serves The Best Interests Of the Estate and Creditors**

17    If the sale is not approved, the Debtors will incur costs with trying to find a new buyer, if

18    one could be found, or (more likely) the Debtors will immediately close down the foam

19    manufacturing business operations of AMI.  In order to preserve the going concern of the Foam

20    Manufacturing Business Assets, and consequently their value, the Debtors must conduct an

21    immediate sale of the Foam Manufacturing Business Assets.

22    Immediately prior to and since the Petition Date, the Debtors have diligently explored

23    various options for disposing of their assets.  The Debtors have contacted a number of entities to

24    determine their interest in the purchase of their Foam Manufacturing Business Assets.  The

25    Debtors believe that they have pursued thoroughly all means to maximize the value of the Foam

26    Manufacturing Business Assets.  The proposed sale herein represents the best means to

27    maximize the value of the Foam Manufacturing Business Assets.  Thus, the Debtors have made a

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1  business decision that it is in the best interest of the Estates and creditors that this Sale Motion be

2  approved.

3       **3.**     **Accurate and Reasonable Notice**

4      Under the circumstances of this case,  it is expected that notice of this Sale Motion will

5  satisfy the requirements for accurate and reasonable notice and will be appropriate under the

6  circumstances.

7      The Debtors shall provide notice of the proposed sale to creditors as directed by the Court

8  order setting the hearing on the Sale Motion.  Notice of this Sale Motion will be served on all

9  parties as directed by Court order and will include a summary of the terms and conditions of the

10  proposed sale, the time fixed for filing objections, and a general description of the assets.  The

11  Debtors submits that under the circumstances of these cases and the need to move quickly, the

12  notice requirements will have been satisfied, thereby allowing creditors and parties in interest an

13  opportunity to object to the sale.  Hence, no further notice should be necessary.

14      **4.**     **The Sale is Made In Good Faith**

15      The proposed sale has been brought in good faith and has been negotiated on an "arms

16  length" basis.

17      The court, in <u>Wilde Horse Enterprises</u>, set forth the factors in considering whether a

18  transaction is in good faith.  The court stated:

19

20         'Good faith' encompasses fair value, and further speaks to the
   integrity of the transaction.  Typical 'bad faith' or misconduct,
   would include collusion between the seller and buyer, or any

21         attempt to take unfair advantage of other potential purchasers. . . .
   And, with respect to making such determinations, the court and

22         creditors must be provided with sufficient information to allow
   them to take a position on the proposed sale.  (citations omitted)

23  <u>Id</u>. at 842.

24      In the present case, the negotiation of the proposed sale was an arms-length transaction.

25  The negotiations with the prospective buyers is anticipated to result in an offer to sell that will

26  have substantial benefit.  As set forth in the Notice of the Sale Motion, the creditors will have

27  been provided with sufficient notice of the sale.

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

21

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

**B.**     **Sale of the Property Free and Clear of Liens and Encumbrances Should be**

**Permitted**

Bankruptcy Code Section 363(f) allows a Chapter 11 debtor to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1)     applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

> (2)     such entity consents;

> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4)     such interest is in bona fide dispute; or

> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Bankruptcy Code Section 363(f).

Section 363(f) is written in the disjunctive and thus only one of the enumerated conditions needs to be satisfied for Court approval to be appropriate.

1.     **Section 363(f)(2)- Consent**

The sale of Foam Manufacturing Business Assets is proper pursuant to Section 363(f)(2). The Debtors believe that secured creditors will have no objection to the sale under the terms set forth herein.  The Debtors desires to take advantage of a favorable purchase offer.   The Debtors are advised that Chase has no objection to the sale as proposed, provided that the sale is concluded quickly. .

Courts have approved sales under Bankruptcy Code Section 363(f) even where the sale price did not exceed the value of the liens asserted on the property so long as the sale is for fair market value.   In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr. W.D. Tex. 1989); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986).

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

2.    **Section 363(f)(4)- Bona Fide Dispute**

The Debtors believe that the sale is also proper under §363(f)(4) because a bona fide dispute exists with regards to the UCC-1 Financing Statement filed by General Electric Capital Corporation.  There are no amounts owing to General Electrical Capital Corporation as the claim was satisfied more than a year ago.  The creditor has failed to release the UCC-1 Financing Statement.

Thus, approval for the sale of the free and clear of liens and encumbrances in the manner provided herein is appropriate.

**C.    The Sales Do Not Contravene Policy**

As early as 1981, a court held that:

> As to whether the sale by a trustee of all of the debtor's assets must take place in the context of a confirmed reorganization plan, the case law again is clear that there is nothing objectionable about a sale of all the assets outside of a Chapter 11 plan.

In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981).

Not to the contrary, the Fifth Circuit decision in In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983), disapproved an asset sale because the transaction at issue involved much more than a sale of property in that the documents significantly limited the debtor's reorganization options.  Id. At 939.

Under the circumstances of the Debtors' business and financial situation, the Debtors believe the only option available is the immediate orderly sale of the Foam Manufacturing Business Assets.  In essence, based on good business reasons, including the current financial market and the economics of the Debtors' situation, and the benefits to be achieved through the sale through cash payments, it is in the best interest of the creditors and the Estates that this Sale Motion be approved.

Accordingly, the sale does not conflict with underlying bankruptcy policy.  See, In re Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind. 1989) (certainty of future for tenants was good business reason and only feasible plan was liquidation, so 363 sale approved despite pending plan of reorganization).

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

23

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

**D.      The Court Has Authority to Approve the Bidding Procedures**

Implementation of the Bidding Procedures is an action outside of the ordinary course of the business.  Bankruptcy Code Section 363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Furthermore, under Bankruptcy Code Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, pursuant to Bankruptcy Code Sections 363(b)(1) and 105(a), this Court may authorize the implementation of Bidding Procedures.

The Ninth Circuit, in a case under the Bankruptcy Act, recognized the power of a bankruptcy court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets.  In re Crown Corporation, 679 F.2d 774 (9th Cir. 1982).  The Crown Corporation court entered an order specifying the minimum consideration required for an overbid as well as the particular contractual terms required to be offered by overbidders.  Id. at 777.  The Crown Corporation decision also approves an order requiring and setting the amount of potential overbidder's deposits and authorized courts to determine the disposition of such deposits.  Id.  While the discussion is not extensive, the Crown Corporation decision recognizes the authority of bankruptcy courts to order the implementation of bidding procedures such as those proposed in the present case.

1.      **The Bidding Procedures are Untainted by Self-Dealing**

The Bidding Procedures have been brought in good faith and have been negotiated on an "arms length" basis.  Therefore, there is no prospective taint in dealings between the Debtors and any potential bidders.

2.      **The Bidding Procedures Encourage Bidding**

The Bidding Procedures are designed to encourage, not hamper bidding and are reasonable under the circumstances.  The Bidding Procedures are intended to provide potential overbidders with adequate information to make an informed decision as to the amount of their bid and the validity of their bid.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

3.      **The Bidding Procedures Serve the Best Interests of the Estate**

The proposed Bidding Procedures serve the Estates in several ways.  First, the procedures themselves are fair, reasonable and productive; they will permit the Debtors to conduct an orderly sale and obtain the best possible price on the best possible terms.

The Bidding Procedures will ensure that all bids will be comparable.  The Debtors will determine which bid is the highest and best for the Estate.  The comparability requirement of the Bidding Procedures will make it possible to accomplish this task.

The Bidding Procedures will help the Debtors to obtain the highest and best possible price for the Foam Manufacturing Business Assets. The Bidding Procedures institutes minimum overbid increments which the Debtors believe are reasonable.  Thus, the Debtors will be able to obtain substantial benefit for this Estate from the sale from competing bids.

The Bidding Procedure requires that potential bidders demonstrate their capacity to complete the transaction.  It would be a serious loss to the Estate if it surrendered the opportunity to sell the Foam Manufacturing Business Assets to one buyer in favor of a competing bidder only to discover the Successful Bidder incapable of consummating the transaction.  Thus, requiring bidders to qualify as bidders will protect the Estates from such a loss.

The most important benefit of the Bidding Procedures to the Estate is that their implementation will enable the consummation of the proposed sale.  The proposed sale will be best way to obtain the maximum and most expedient recovery for creditors.  Implementation of the Bidding Procedures is an essential component of consummating the sale and maximizing the value of the Foam Manufacturing Business Assets for the Estates and creditors.

The Bidding Procedures utilized by the Debtors are fair and provide for a "level playing field" for all prospective bidders with respect to the proposed sale. The Bidding Procedures establish a reasonable but expeditious timeline for allowing the Debtors to give notice of the proposed sale and qualified bidders to conduct reasonable due diligence and submit competing offers, thereby potentially generating additional value.  Furthermore, the notice of the Bidding Procedures and Sale Motion is designed to attract the most interest in the acquisition of the Foam

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1  Manufacturing Business Assets and is sufficient under the circumstances of these cases.   Thus,

2  approval of the Bidding Procedures would serve the best interests of the Estates and creditors.

3  **E.**    **The Costs for the Preservation and Disposal of the Collateral May be Recovered**

4  **From the Sale Proceeds**

5  Bankruptcy Code Section 506(c) provides that:

6  > [t]he trustee may recover from property securing and allowed
   > secured claim the reasonable, necessary costs and expenses of
7  > preserving, or disposing of, such property to the extent of any
   > benefit to the holder of such claim.

8
   Pursuant to Bankruptcy Code Section 506(c) the Debtors request authorization to
9
   surcharge the collateral of the secured creditor Chase for the costs the Estates may have incurred
10
   in the maintenance of their respective collateral as well as with the preservation and disposition
11
   of such collateral.  The Debtors are advised that Chase has consented to this surcharge subject to
12
   the limits discussed above.
13
   The professionals of the Estates believe that their diligent efforts to preserve and dispose
14
   of the Chase's collateral clearly has benefited the collateral.  Moreover, the Debtors believe all of
15
   the efforts of the professionals in this case were directly related to the preservation and eventual
16
   disposition of Chase's collateral.  Thus, surcharging Chase's collateral under Bankruptcy Code
17
   Section 506(c) is appropriate.   The fees payable pursuant to the surcharge will be subject to
18
   further application and Court order on the allowance of the professionals' fees and expenses
19
   under the applicable provisions of the Bankruptcy Code.
20
   The Bankruptcy Code requires only that expenditures be "reasonable, necessary costs and
21
   expenses of preserving, or disposing of such property" not that the claimant have the best
22
   interests of the secured creditors in mind.  See, In re Parque Forestal, Inc., 949 F.2d 504 (1st Cir.
23
   1991); In re McKeesport Steel Castings Co., 799F.2d 91 (3d Cir. 1986); In re Delta Towers, Ltd.,
24
   924 F.2d 74 (5th Cir. 1991);  In re Palomar Truck Corp., 951 F.2d 229 (9th Cir. 1991), cert.
25
   denied, General Elec. Captial Corp v. North County Jeep & Renault, 506 U.S. 821, 121 L.Ed. 2d
26
   37, 113 S.Ct. 17 (1992).
27

28

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

26

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1    The services performed by the counsel for the Debtors and the Official Committee of

2    Unsecured Creditors, preserved the value of assets of for the benefit of Chase.  Where such

3    services are performed, surcharge pursuant to section 506(c) is appropriate.  See, In re Annett

4    Ford, Inc., 64 B.R. 946 (D. Neb. 1986) (continued operation of Chapter 11 debtor car dealership

5    postpetition was for benefit of secured creditor, therefore administrative expenses claimed for

6    taxes, attorney's fees and wages which were incurred as result of operation of business are to be

7    paid out of proceeds of creditor's collateral under 11 U.S.C.§§ 506(c)).

8    In this Circuit, the party seeking surcharge generally must show that the incurred

9    expenses were: (1) reasonable; (2) necessary; and (3) beneficial to secured creditor. Snohomish

10   County v. Seattle-First Nat'l Bank (In re Glasply Marine Industries, Inc.), 971 F.2d 391 (9th Cir.

11   1992); In re Cascade Hydraulics & Utility Srv., Inc., 815 F.2d 546 (9th Cir. 1987).  In this case,

12   the professionals will be filing applications for fees in accordance with the applicable provisions

13   of the Bankruptcy Code which will detail that their fees are reasonable, necessary and benefited

14   the Secured Creditors.  The funds from the sale of the sale of the Foam Manufacturing Business

15   Assets in the amount of $35,000 will be held by the Debtors in a segregated surcharge account

16   subject to the fee application process under the applicable provisions of the Bankruptcy Code.

17   Preservation of the going concern value of business can constitute benefit to a secured

18   creditor under section 506(c). Annett Ford, 64 B.R. 946 (expenses incurred during preservation

19   effort should be paid out of liquidation fund, even where effort is unsuccessful); In re

20   Hospitality, Ltd., 86 B.R. 59 (Bankr. W.D. Pa. 1988) (preservation of going concern value of

21   business can constitute benefit to secured creditor for purposes of determining entitlement to 11

22   U.S.C. §§ 506(c) administrative expenses; however, such determination is factual and must be

23   made on case-by-case basis). Here, Chase would have to enforce its lien against a defunct debtor

24   and would not have been able to realize the value from its collateral that the Debtors achieved

25   through the sale of the Foam Manufacturing Business Assets as proposed herein. Surcharge

26   pursuant to Section 506(c) is appropriate where the debtor's actions relieve a secured creditor of

27   expenses such as enforcing its rights and conducting a foreclosure sale. See, In re H.P. Tool Mfg.

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

27

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1   <u>Corp.</u>, 12 B.R. 600 (Bankr. E.D. Pa. 1981). Also, the amount of surcharge is not limited only to

2   the savings of such foreclosure costs. <u>See</u>, <u>In re Anderson</u>, 66 B.R. 97 (B.A.P. 9th Cir. 1986).

3        Thus, surcharging the collateral of Chase under Bankruptcy Code Section 506(c) is

4   appropriate.

5   **F.    <u>The Court has Authority to Waive the Ten-Day Stay of Sale</u>**

6        Federal Rule of Bankruptcy Procedure 6004(g) provides that "[a]n order authorizing the

7   use, sale or lease of property other than cash collateral is stayed until the expiration of 10 days

8   after entry of the order, unless the Court orders otherwise."

9        The Debtors desires to close the sale on the sale as soon as practicable after entry of an

10  order approving the sale.  Furthermore, the Buyer has conditioned its offer on the sale closing by

11  August 31, 2009.  Accordingly, the Debtors request that the Court in the discretion provided it

12  under Federal Rule of Bankruptcy Procedure 6004(g), waive the ten-day stay of the order

13  granting this Sale Motion and approving the sale.

14              **V.    <u>CONCLUSION</u>**

15       Based upon the foregoing, the Debtors respectfully submits that good cause exists for

16  granting the Sale Motion and the Debtors respectfully request that the Court enter an order as

17  follows:

18       1.    Approving the Bidding Procedures utilized by the Debtors in connection with the

19  proposed sale of the Foam Manufacturing Business Assets.

20       2.    Approving the Asset Purchase Agreement attached as **Exhibit 1** to the Lehman

21  Declaration, as modified  by the Successful Bidder, and authorizing the Debtors to sell the Foam

22  Manufacturing Business Assets pursuant to the terms and conditions set forth in the Asset

23  Purchase Agreement, as modified  by the Successful Bidder.

24       3.    Approving the sale of the Foam Manufacturing Business Assets to proceed free

25  and clear of all liens and encumbrances with liens and encumbrances not satisfied through the

26  sale to attach to the proceeds of the sale in the same validity and priority as prior to the Petition

27  Date, pending agreement with the creditor or further Court order.

28

**SHULMAN HODGES &
BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

28

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

4.    Authorizing the Debtors to sign any and all documents convenient and necessary in pursuit of the sale as set forth above, including but not limited to any and all conveyances contemplated by the sale and the Asset Purchase Agreement.

5.    Approving a Bankruptcy Code Section 506(c) surcharge in the amount of $35,000 against the collateral of the secured creditor Chase for the costs the Estates have incurred in the maintenance of Chase's collateral (consisting of the Foam Manufacturing Business Assets) as well as with the preservation and disposition of such collateral.

6.    Waiving the ten-day stay of the order approving the sale of the Foam Manufacturing Business Assets under Federal Rules of Bankruptcy Procedure 6004(g).

7.    And for such other and further relief as the Court deems just and proper under the circumstances of these cases.

Dated: August 24, 2009          Respectfully submitted,

                                **SHULMAN HODGES & BASTIAN LLP**

                                /s/ Mark Bradshaw
                                _____
                                Mark Bradshaw
                                Proposed General Counsel for
                                Advanced Materials, Inc., a California corporation and
                                Advanced Materials Group, Inc., a Nevada corporation, the
                                Debtors and Debtors in Possession

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

# DECLARATION

## <u>DECLARATION OF MARTIN A. LEHMAN</u>

I, Martin A. Lehman, declare:

1.      I am the Interim President for Advanced Materials, Inc., a California corporation ("AMI") and Advanced Materials Group, Inc., a Nevada corporation ("AMG"), the debtors and debtors in possession herein ("Debtors").  I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.  I am also personally familiar with, and am custodian of, the records of the Debtors as they pertain to the financial records set forth herein.  The records of the Debtors are made by agents of the Debtors who report to me and who have a business duty to enter the records of the Debtors accurately and at or near the time of the event which they record.

1.      I make this declaration in support of the Debtors' Motion For Order: (1) Approving Sale of Substantially All Assets of the Estate of Advanced Materials, Inc., Pursuant to Bankruptcy Code Section 363(b)(1) and (f); (2) Approving Bidding Procedures Utilized by the Debtors;  (3) Approving Asset Purchase Agreement; (4) Approving Stipulated Bankruptcy Code Section 506(c) Surcharge; and (5) Granting Other Related Relief ("Sale Motion").   Unless otherwise noted, capitalized terms herein have the meaning as set forth in the Sale Motion.

2.      The Debtors each filed a voluntary petition for relief under Chapter 11 of United States Bankruptcy Code on July 2, 2009 ("Petition Date").  The Debtors are continuing in their operation and management of their business as debtors in possession.

3.      Upon the Motion for Order Directing Joint Administration of Related Cases filed by the Debtors and considered by the Court at a hearing held on July 7, 2009, the Court ordered Debtors' bankruptcy cases to be jointly administered under Case No. 8:09-bk-16548 TA in accordance with Federal Rule of Bankruptcy Procedure 1015(b).

4.      Prior to the Petition Date, AMG was a publically traded company (ticker ADMG:OTC) but has now been delisted by the Securities and Exchange Commission.  AMG's primary asset is its ownership of 100% of the shares of AMI.  Debtor AMI is the operating entity which develops, manufactures and markets a wide variety of products from a raw material base of flexible components.  AMI's customers are in the medical disposables, technology, aerospace,

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1   automotive and consumer markets.  AMI (formerly known as Wilshire Advanced Materials, Inc.)

2   is the successor to a 50 year old business that converted specialty materials including foams,

3   foils, films and adhesive composites into components and finished products.  In 2008, AMI

4   continued its transition from the foam fabricator/contract manufacturing business to proprietary

5   medical and consumer products.

6           5.      Examples of the products AMI manufactures include non-skid surgical instrument

7   pads and applicators for medical use, soap impregnated surgical prep kit sponges, protective

8   units for arthroscopic and orthopedic instruments, printer cartridge inserts and inking felts,

9   automobile insulators and water and dust seals. These products are made for a number of

10  customers in various markets including medical, technology, aerospace, automotive and

11  consumer.  AMI's offerings to its customers include contract manufacturing, engineering and

12  fulfillment services.  AMI's Advanced Materials Fashion Solutions Product Division sells and

13  markets proprietary consumer fashion products.  Effective January 1, 2008, AMG entered into a

14  strategic licensing agreement with Easy Industries, LLC for its line of women's problem-solving

15  fashion and accessory products, branded as Miss Oops®.  Through this agreement, AMG

16  obtained rights to the Miss Oops® name and product line and a 10% equity ownership of Easy

17  Industries, LLC.

18          6.      The  principal events leading to the Debtors' current financial problems arise from

19  the intentional and negligent conduct by the AMG's former president, William Mortensen, who

20  was also the Chief Financial Officer for AMI.  The Debtors are investigating the allegations that

21  Mr. Mortensen falsified company records and used assets of the Debtors, including substantial

22  amounts of cash, for his own personal use.  On or about June 2, 2009, the Chairman of the Audit

23  Committee of the Company Board of Directors for AMG and the AMG's Chairman of the Board

24  received an anonymous tip pursuant to their whistleblower policy which alleged that there may

25  have been financial irregularities at the company.  Following a preliminary investigation, on

26  June 8, 2009, the Audit Committee and full Board of Directors determined that restatements of

27  the AMGI's consolidated financial statements for the fiscal year ended November 30, 2008 and

28  for the interim quarterly periods ended May 31, 2008, August 31, 2008, and February 28, 2009

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

31

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1  were necessary.  Accordingly, the reports AMGI filed on Form 10-KSB for the fiscal year ended

2  November 30, 2008, and on Form 10-Q for the quarters ended May 31, 2008, August 31, 2008,

3  and February 28, 2009 with the United States Securities and Exchange Commission should no

4  longer be relied upon.  Because the investigation has not yet been completed, the extent of the

5  revenue and accounts receivable overstatements during the forgoing period have not yet been

6  fully quantified.

7        7.    On June 7, 2009, Mr. Mortensen was terminated for cause.  One of the assets of

8  the Debtors is claims against Mr. Mortensen in an amount to be determined.  Due to the loss of

9  funds and irregular reporting by prior management, the Debtors had been unable to meet

10  operating expenses, to pay employees, to pay for utility services including gas, electric, and

11  water, and to pay vendors and supplies.  Upon the termination of Mr. Mortensen, I was hired as

12  Interim President.  I am in charge of overseeing AMI's day-to-day operations, will oversee

13  matters affecting AMG, and will be the responsible officer for managing the affairs of the

14  Debtors' Estates.

15        8.    Shortly after the Petition Date, the Debtor initiated a process to sell the Foam

16  Business Manufacturing Assets and informally drafted and circulated bidding procedures similar

17  to those typically seen in connection with bankruptcy sales.  The Debtor solicited offers from

18  competitors, vendors, employees, management, and anyone the Debtor believed might have a

19  reasonable interest and ability to close a sale transaction.  The Debtor initiated this process in

20  part based on its projections that it would run out of cash by September 2009, and in part because

21  it estimated that the value of the assets to be sold were less than the amount of the secured debt

22  owed to Chase.

23        9.    Six parties signed non-disclosure agreements and engaged in due diligence in

24  connection with the sale.  Of those parties, three submitted letters of intent expressing an interest

25  in proceeding with a sale transaction.  The three letters of intent contained materially different

26  terms.  After internal discussions at the Debtor about the merits and weaknesses of the various

27  LOIs, the Debtor solicited the comments of Chase, and the parties agreed that one of the LOIs

28  appeared to be superior to the others and warranted moving forward.  Thereafter, the Debtor

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

32

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1  drafted a formal purchase and sale agreement and forwarded it to the proposed purchaser and to

2  Chase.  In the days and then weeks that followed, various drafts of the purchase agreement were

3  prepared and the parties generally progressed in a positive direction.

4      10.    Unfortunately, the Debtor's cash position did not improve and it became clear that

5  the Debtor would have to cease all business operations and terminate employees at the end of

6  August 2009.  Therefore, the Debtor decided, after consulting with Chase, that a sale motion had

7  to be filed immediately with a sale date set as soon as possible.  Moreover, because of protracted

8  negotiations over terms of the asset purchase agreement it became necessary to prepare a form

9  purchase agreement with a fixed sale price and other terms that created certainty in the

10  transaction.

11      11.    The Debtor is proposing to sell the Purchased Assets through an auction

12  procedure with the name of the buyer currently left blank in the purchase agreement.  As set

13  forth in the purchase agreement, the proposed sale price for the assets, subject to overbids, is

14  $650,000.  Subject to the Bidding Procedures set forth in the Sale Motion and Court approval,

15  the Debtors are seeking Court approval of for the sale of substantially all assets relating to the

16  foam manufacturing business of AMI to the Successful Bidder, pursuant to the terms and

17  conditions as set forth in a certain Asset Purchase Agreement ("Agreement" or "Purchase

18  Agreement"), a true and correct copy of which is attached hereto as **Exhibit 1, as such Purchase**

19  **Agreement is modified by the bid of the Successful Biddder**.

20      12.    The Chart set forth in the Sale Motion reflects the liens and encumbrances against

21  the Foam Manufacturing Business Assets and their proposed treatment through the sale.  The

22  Debtors believe that none of the secured creditors will object to the sale free and clear of their

23  respective liens, with liens not satisfied through the sale, to attach to the proceeds of the sale in

24  the same validity and priority as prior to the closing of the sale pending further agreement or

25  further court order.

26      13.    Through the Sale Motion, the Debtors also seek approval of a Bankruptcy Code

27  Section 506(c) surcharge in the amount of $35,000 against the collateral of the secured creditor

28  Chase for the costs the Estates have incurred in the maintenance of Chase's collateral (consisting

**SHULMAN HODGES &**
**BASTIAN LLP**
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

33

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

1   of the Foam Manufacturing Business Assets) as well as with the preservation and disposition of

2   such collateral[3].  Payment to professionals (the Debtors' counsel and counsel for the Official

3   Committee of Unsecured Creditors) covered by the surcharge will be subject to further

4   application and Court order on the allowance of the professionals' fees and expenses under the

5   applicable provisions of the Bankruptcy Code.  The professionals will be filing applications for

6   fees in accordance with the applicable provisions of the Bankruptcy Code which will detail that

7   their fees are reasonable, necessary and benefited the secured creditors.  The funds from the sale

8   of will be held by Debtors in a segregated surcharge account subject to the fee application

9   process under the applicable provisions of the Bankruptcy Code.

10          14.     Prior to and since the Petition Date, the Debtors have explored diligently various

11   options for their assets.  The Debtors have contacted a number of entities to determine their

12   interest in the purchase of their Foam Manufacturing Business Assets.  The Debtors believe that

13   they have pursued thoroughly all means to maximize the value of the Foam Manufacturing

14   Business Assets.

15          15.     The Debtors have inadequate cash flow to fund operations, the Debtors do not

16   have the luxury of the time needed to propose and solicit acceptance of a Chapter 11 plan prior to

17   the closing of the sale of the Foam Manufacturing Business Assets.

18          16.     Furthermore, as the Debtors continue to accrue ordinary course of business

19   administrative expense obligations, it is imperative that the Debtors close on the sale of the Foam

20   Manufacturing Business Assets as soon as possible, to prevent the accrual of additional

21   administrative claims that would be detrimental to creditors.

22          17.     A further reason for moving quickly on the sale is to preserve any going concern

23   value of AMI's business operations and prevent the shutdown of AMI's foam manufacturing

24   business.  As set forth above, certain of the Foam Manufacturing Business Assets to be sold are

25   subject to the lien of Chase.  Chase has advised the Debtors that they either want the sale to be

26   
27   [3]     This amount would be paid pro rata to counsel for the Debtors and counsel for the Creditors' Committee
        based on total fees and costs due.  This amount is separate from and in addition to the $100,000 retainer
28      paid to the Debtors' counsel prior to the Petition Date.  The Debtors negotiated this proposed carve out with
        Chase earlier this month.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc

34

1   immediately concluded or the foam manufacturing business immediately closed down due to the

2   inadequate cash flow.  The Debtors do not dispute that Chase is owed more than $2.7 million and

3   that none of the offers received by the Debtors in the initial round of bidding exceeded $1

4   million.

5        18.    In summary, the Debtors have made a business decision that it is in the best

6   interest of the creditors of the Estates that this Sale Motion be approved.  The sale provides

7   benefit to the Estates in that the alternative is to cease business operations, and the sale will

8   preserve jobs and the value of the Foam Manufacturing Business Assets.  Thus, good cause

9   exists to grant the Sale Motion.

10       I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct.

12       Executed on August 24, 2009, at Irvine, California.

Martin A. Lehman

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4052-000\50

G:\Wp\Cases\A-B\Advanced Materials\Pld\Sale Mtn-Foam Manufacturing Assets-002.doc